## HENRY BARTLETT *vs.* WILLIAM P. JOHNSON.

It is not essential to the validity of the foreclosure of a mortgage by an entry made for breach of the condition without a judgment, that the certificate of witnesses to prove the same, required by Rev. Sts. *c.* 107, § 2, should be made on the mortgage deed; but tha same may be made on a separate paper.

If the maker of a note has transferred to the payee shares in a corporation under a written agreement which recites that they are to be held as collateral security for the note, and to be retransferred upon the payment thereof with interest, and the dividends accounted for, and that the loss on a certain house is to be "bound by the same transfer of stock," and it appears that the payee of the note had purchased of the maker and another person a mortgage upon the house referred to, and foreclosed the same, the shares are to be considered as pledged to secure the loss which may be sustained on the house; and a bill in equity will not lie to reedem the shares without offering to pay what shall be found due on account of such loss. And in order to ascertain the amount of such loss a sale of the house will be ordered, unless the defendant will accept the decision of a master as to its value.

Although some time after making the agreement that the shares should be held as collateral security for the loss on the house a statement of such loss was made by the purchaser, by adding the interest for several years to the original cost, without allowing anything for rent, and the plaintiff thereupon guaranteed to him in writing all loss that might accrue thereon, this is not to be taken, in a bill in equity to redeem the shares, as superseding the pledge, or as an account stated between the parties; and, in making up the account of the sum due, interest should be reckoned upon the original cost, and not upon the balance so found; and the purchaser is not chargeable with any rent which he did not receive, nor is he entitled to any commissions.

If in such case the plaintiff authorized the defendant to let the house in question until it should be sold, and never afterwards requested it to be sold, the defendant is not guilty of such laches, by waiting five and one half years without selling it, as to show an election on his part to take it for his own, at its cost, and to waive all claim against the plaintiff for the loss.

Bartlett *v.* Johnson.

If a bill to redeem shares which have been pledged as collateral security for two several liabilities sets forth and offers to pay only one of them, so that an amendment is necessary before the bill can be maintained, the plaintiff should have no costs up to the time of the amendment; and if the defendant has wrongfully denied the plaintiff's right to redeem on any terms, he should have no costs up to the same time.

BILL IN EQUITY brought in September 1863, setting forth that on the 17th of November 1857 the plaintiff borrowed of the defendant the sum of $2792.86, and gave his note therefor payable in six months with interest; that as security for the payment of said note he transferred to the defendant nine shares of the Bartlett Steam Mills, taking from the defendant the following agreement, signed and sealed by the defendant: " Newburyport, Nov. 17, 1857. Received of Henry Bartlett nine shares in the Bartlett Steam Mills, which I hold as collateral security for his note dated this day, for the sum of $2792.86, payable in six months with interest. When the said Bartlett shall well and truly pay the above note with interest, I agree to retransfer the said stock, and to account for all the dividends that may accrue on the same — the loss on John Osborn's house being bound by the same transfer of stock; " that each of said shares has since been converted by the said corporation into five shares, so that the defendant now holds forty-five shares in the place of the nine shares, and has received all the dividends that have been declared since said 17th of November; and that the dividends so received greatly exceed the interest on the note, and on the 8th of March 1863 there was justly due to the defendant upon the note only the sum of $1128.54, and that on that day he tendered to the defendant on the note the sum of $1138, and requested the defendant to deliver the same to him and to retransfer the shares, which the defendant refused to do. The prayer was, that an account might be taken of the amount due on the note for principal and interest, and of the dividends received by the defendant upon the shares, and that the defendant, upon payment to him of the amount so found due, might be ordered to deliver up the note and retransfer the shares; and that the plaintiff might have other and further relief.

The defendant in his answer, among other things, averred that the plaintiff refused to pay the note at its maturity, though

requested; that prior to the date of the note the plaintiff and William C. Williams had transferred to him certain notes signed by John Osborn, and secured by a mortgage on Osborn's house; that the plaintiff agreed that the loss on Osborn's house should be bound by the same transfer of stock; that afterwards, on the 2d of December 1857, the plaintiff further agreed to pay all loss on said mortgage, by the following agreement:
"Dr. Messrs. Williams & Bartlett, in acc't mortgage House John Osborn,

| | |
|---|---:|
| To 4 notes, $200 each, with semi-annual interest, all over due, . . . . . . . . . | $800 |
| Interest paid to Jan'y 1, 1853. | |
| Interest from Jan'y 1, 1853, to July 1, 1857, 4 years 6 months, . . . . . . . . . | 216 |
| | |
| Cash, July 1, 1857, . . . . . . . . | $1016 |

" Newburyport, Dec. 2, 1857. I hereby guarantee to Wm. P. Johnson all loss that may accrue on the mortgage transferred by W. C. Williams and Henry Bartlett to him on house in Ocean Street, the same being now occupied by John Osborn, in consideration of one dollar paid me in hand this day, and in consideration of gain, the same shall accrue to me above all charges. Henry Bartlett; " that the value of the house and the income derived from the same, after deducting taxes and necessary repairs, were not sufficient to pay the amount due on account of the mortgage, and the shares were bound for the deficiency, and after applying the same nothing remained in the defendant's hands; and that the plaintiff had no right to equitable relief.

The case was referred to a master, who found the following facts : The agreement of the defendant set forth in the bill was executed by him under the circumstances stated, and the par value of the shares in the Bartlett Steam Mills was subsequently changed so that the defendant held forty-five shares in place of the nine which the plaintiff transferred to him. Dividends on these shares, amounting in all to $2790, were paid to the defendant at various times from November 1858 to

November 1863. On the 18th of March 1863 the sum of $1137.39 was due upon the note, after applying the dividends; and on that day the plaintiff tendered to the defendant the sum of $1138, and demanded the shares, but the defendant declined to transfer them, or to receive the money.

For the purpose of showing that the defendant had effectually foreclosed the plaintiff's right to redeem the shares, certain evidence was introduced before the master which, at the hearing in this court, the defendant's counsel did not contend was sufficient for that purpose; and the same is therefore omitted.

The master stated an account of what was due upon the note, showing that, if interest was reckoned to November 10, 1863, the sum of $830.68 was then due, or, if no interest was reckoned after the making of the tender, the sum of $793.14 was then due. The defendant claimed an allowance for commissions on the dividends collected and compensation for his trouble; but the master disallowed this claim.

On the 29th of December 1852 the plaintiff and William C. Williams, being assignees of a mortgage upon a house of John Osborn to secure the sum of $800, assigned the same and the four notes secured thereby, amounting together to the sum of $800, to the defendant; and on the 11th of February 1854 the defendant made a peaceable entry upon the premises for the purpose of foreclosure, in the presence of two witnesses, who made a certificate and affidavit thereof, not written upon the mortgage, but upon a separate paper. This certificate was duly recorded. Osborn continued to occupy the house and began to pay rent, at the rate of five dollars a month, on the 22d of March 1858, and continued to do so until the 22d of September 1863. The defendant made no effort to collect rent until after the expiration of three years from his entry to foreclose. On the 2d of December 1857 the plaintiff executed to the defendant the written agreement set forth in the answer; and on the 22d of May 1858 the plaintiff signed the following agreement: " Newburyport, May 22, 1858. I hereby authorize William P. Johnson Esquire to let the house now occupied by John Osborn until such time as the house shall be disposed of and sold."

The master found that the Osborn house was now worth $800, and had been worth the same sum ever since February 1857, and that the fair annual rent thereof for ten years past was $60. The defendant contended that in computing interest the sum of $1016 should be taken as having been agreed upon by the parties as the amount which, on the 1st of July 1857, the house had cost; but the master computed the interest on $800, and stated an account showing the amount of loss upon the house in the alternative as the court should or should not hold the defendant chargeable for rents not actually received.

The case was reserved by *Metcalf,* J., upon this report, for the determination of the whole court.

*S. B. Ives, Jr.,* for the plaintiff. The only question of difficulty is in regard to the loss on the Osborn house. Long before November 17th 1857 the defendant had acquired a perfect title to it. The plaintiff had no right whatever in respect to it. The only meaning, therefore, which can properly be given to the words in the receipt of the defendant is, that the shares should be held for the loss which had then accrued on that purchase, and not for such loss as might thereafter arise. That loss is easily ascertained. It is the cost, adding interest, and deducting its fair rentable value, and, by a computation, amounts to only eight dollars. The guaranty by the plaintiff was a subsequent and independent transaction upon a new consideration. There is no principle upon which collateral security can be held to attach to such new contract merely by implication. The sole question, upon this branch of the case, depends upon the language of the defendant's receipt.

The plaintiff was not bound to ask for a sale of the house before bringing this bill. He had no title, legal or equitable, thereto. But if the loss on the house can only be ascertained by a sale, then the defendant has been guilty of laches in neglecting for so long to sell it. His conduct shows an election on his part to take it for his own at its cost, and a waiver of all claim for a loss upon it.

*J. W. Perry,* (*C. A. Kimball* with him,) for the defendant.

HOAR, J. It is very clear that the plaintiff's right to redeem

his mortgaged stock has not been foreclosed. The statute requisitions for foreclosure have not been complied with.

The next question which presents itself is, whether the plaintiff is entitled to a transfer of the stock on payment of the amount remaining due on his note, for which it is agreed that the stock was originally held by the defendant as collateral security. The agreement to hold the stock transferred as collateral security, and by which the defendant agreed to reconvey it on payment of the note, contains these words : " The loss on John Osborn's house being bound by the same transfer of stock." At the time this agreement was made, the defendant had purchased of the plaintiff and one Williams a mortgage on John Osborn's house ; and had foreclosed the right of redemption by taking possession of the mortgaged premises in the presence of two witnesses, whose certificate of the fact was duly sworn to and recorded ; and the three years for redemption had expired. The only objection to the validity of the foreclosure is, that the certificate was not made on the back of the mortgage ; and this is not required by the statute, and is unimportant. It thus appears that the stock was mortgaged not only to secure the payment of the note, but as an indemnity against any loss which the defendant might sustain on his purchase of the mortgage, which had resulted in the ownership of the house. That there has been a loss on the house, in any mode of viewing it, is evident. At the date of the agreement, November 17th 1857, the defendant had received nothing for the eight hundred dollars which it had originally cost him, and for more than four years' interest upon that sum ; and the master finds that the house was then and has ever since been worth only eight hundred dollars. On the 2d of December 1857, the plaintiff gave his guaranty to the defendant against loss on the house, and in this the amount chargeable to the house up to the preceding July was stated at ten hundred and sixteen dollars. It is true, as the plaintiff contends, that the guaranty was a new and independent contract, on a new consideration ; but it related to the same subject matter ; and is strong evidence of the understanding of the parties, both of the sum to be charged to the account of the house, and

of the mode in which the question whether there would be a loss should be decided — namely, by a sale. There has been no sale, nor have there been any receipts from the house which would reduce its cost to its value.

The defendant is not bound, therefore, to reconvey the stock to the plaintiff, merely upon payment of the amount remaining due upon the note, but is entitled to hold it until he has been indemnified for the loss upon the house. And this result is decisive against the maintenance of the suit in its present form, because the bill does not recognize in any way the rights of the defendant to hold the stock except as collateral security for the note; and does not offer to have any account taken, or to pay anything upon any further liability.

But as great expense has been incurred in ascertaining the facts upon which the rights of the parties depend, they have very wisely agreed that the bill may be amended as the court shall think is requisite, upon proper terms, and that thereupon the account shall be settled upon the report of the master already made, in such manner as the court shall direct.

The plaintiff will therefore be allowed to amend his bill by introducing proper averments to show that the defendant holds the stock which he seeks to redeem as security for any loss upon the Osborn house, as well as for the payment of the note; and by praying for an account to be taken of the loss upon the house, and that it may be ascertained by a sale of the house, unless the defendant elects to take it at the master's valuation, which he may do.

The plaintiff may then have a decree for the reconveyance of the stock, upon paying the amount found due according to the report of the master, after the value of the house has been fixed by a sale under the order of the court, unless the defendant is satisfied to take it at the valuation fixed by the master.

Interest is only to be allowed on the principal sum of eight hundred dollars, and not upon ten hundred and sixteen dollars. The accounts rendered by the defendant show that such was his understanding of the agreement; and the sums received for dividends on the stock were as applicable to reduce the interest on

the eight hundred dollars which the house cost, as they were to the note.

There is nothing in the relation of the parties which we think should make the defendant chargeable with any rent which he did not receive, or entitled to any commissions.

We do not think the defendant was guilty of any laches in not making a sale of the house, as his letter of May 18th 1858, and the plaintiff's indorsement on the guaranty under date of May 22d 1858, show that the sale was deferred by consent of both parties; and the plaintiff is not shown since that time to have requested that a sale should be made. The tender was insufficient in amount, and does not affect the rights of the parties.

Neither party is to have costs up to the present time. Not the plaintiff, because he has brought a suit which he could not maintain, in utter disregard of a substantial and well founded right of the defendant; nor the defendant, because he has unjustly denied and resisted the plaintiff's right to redeem on any terms.

After the amendment of the bill allowed by the court has been made, the cause will be referred to a master, with directions to cause a sale of the Osborn house, unless the defendant elects to retain it at the valuation already fixed; and then to state the account in conformity with the rules above given, and to take an account of the dividends, interest, rents, taxes and expenses since the last report, unless the parties can agree without further litigation.